IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRICEL M.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO. 21-1384 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 12. The Commissioner opposed. Docket No. 17. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 5. After careful review of the administrative record and the parties' briefs, the Commissioner's decision is **AFFIRMED**.

**I.   Procedural Background**

Plaintiff worked as a secretary in a medical office, and prior to that, as an office clerk at a government agency. Tr. 43-46.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of October 18, 2016, the following conditions limited her ability to work: asthma, right side carpal tunnel syndrome, high blood pressure, depression, anxiety, spinal cord pain, and bilateral hearing loss. Tr. 637. The application was denied initially and upon reconsideration. Tr. 69-75. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on December 4, 2019, a hearing was held before ALJ Livia Morales. Tr. 38-68. Plaintiff testified and was represented by an attorney. Id. Vocational Expert Dr. Marieva Puig also testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of October 18, 2016, through January 15,

---

[1]     Plaintiff's last name is omitted for privacy reasons.
[2]     "Tr." refers to the transcript of the record of proceedings.

1

2020, the last date insured. Tr. 21-31. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ, but this request was denied on June 22, 2021 (Tr. 1-5), rendering the Commissioner's decision the final decision for review by this Court. On August 18, 2021, Plaintiff filed the Complaint, which the Commissioner answered on January 5, 2022, and both parties filed supporting memoranda. Docket Nos. 1, 9, 12, and 17.

## II.    Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See Id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. §423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-142. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986).

If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the

claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B. Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). In reviewing a decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F.3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the

3

Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F.2d 1, 3 (1st Cir.1987). Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no rationally adequate evidence to justify the ALJ's conclusion. Manso–Pizarro, 76 F.3d at 16; Seavey, 276 F.3d at 9.

### III. Discussion

Plaintiff argues that the ALJ erred by failing to categorize several of her impairments as severe, formulating an insufficient RFC, and concluding that Plaintiff could perform her relevant past work. The Commissioner sustains that the ALJ's decision was based on substantial evidence on the record and correct legal standards. The Court agrees with the Commissioner.

**A. The ALJ Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2016, the alleged onset of disability. Tr. 23. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): cervical spine disorder, lumbar spine disorder with radiculopathy, thoracic spine disorder, left shoulder degenerative joint disease, left knee degenerative joint disease, and rheumatoid arthritis.[3] Tr. 23. The ALJ further found that Plaintiff had a series of impairments that were not severe because these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 23-24. The ALJ concluded that Plaintiff's bilateral hearing loss and obesity were non-severe. Tr. 24; 1755; 1699. The non-severe impairments were evaluated in combination with Plaintiff's severe impairment in determining her RFC.

---

[3] Plaintiff mentions in passing that the ALJ erroneously discarded as non-severe other physical impairments, such as spurring of the pelvis, obesity and hernia. Docket No. 12, at 3. This argument was not developed. Arguments not fully developed or made in passing are deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

The ALJ then analyzed Plaintiff's mental impairments— depression, anxiety, and post-traumatic stress disorder— and concluded that these were non-severe. Tr. 24. Plaintiff's mental functioning was also considered in formulating the RFC. Specifically, the ALJ stated that the paragraph B analysis was applied in steps three and four:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.  Tr. 25.

Therefore, at the conclusion of the step two analysis, the ALJ incorporated the paragraph B criteria in the step four RFC determination.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and proceeded to determine Plaintiff's RFC. Tr. 25-26. After considering the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §404.1567(b), except that she:

> can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, or crawl. She can frequently work around moving mechanical parts and operate a motor vehicle, but can never work at unprotected heights. She can frequently overhead reach with left upper extremity. She can occasionally work in extreme cold. Beginning August 5, 2019, the claimant is limited to sedentary work due to L4 and L5 radiculopathy. Tr. 26.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which they were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 26-30. After determining Plaintiff's RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as secretary and office clerk. Tr. 30-31. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 31.

### B. Plaintiff's Challenges to the RFC Determination

Plaintiff alleges, that the ALJ erred at step two of the sequential process by failing to categorize Plaintiff's mental impairments as severe, and by formulating an incomplete RFC.

### 1. Plaintiff's Mental Impairments

The ALJ must determine at step two of the sequential analysis whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §404.1520(c). An impairment is considered severe if it significantly limits a claimant's physical or mental ability to perform basic work activities. Id. The degree of limitation caused by a mental impairment is evaluated by looking at four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. 20 C.F.R. §404.1520a(b)(2); §404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00. When the degree of limitation in these areas is found to be *mild or better*, the ALJ will generally conclude that the mental impairment is not severe. 20 C.F.R. §404.1520a(d)(1); Mateo Rivera v. Commissioner, 2020 WL 7786920 *3 (D.P.R.)

In the first area of function— understanding, remembering, or applying information— the ALJ found that Plaintiff had a mild limitation because she needed reminders to take her medications. Tr. 24; 668; 833. In the second functional area— interacting with others— the ALJ noted that Plaintiff did not report having problems getting along with family, friends, and neighbors, and indicated that she could follow verbal and written instructions. However, the ALJ deemed that Plaintiff had a mild limitation because she reported that her attention span was limited to ten minutes. Tr. 24; 668; 836. In the third area of functioning— concentrating, persisting, and maintaining pace— and fourth area of functioning— adapting or managing oneself— the ALJ also found that Plaintiff had a mild limitation and could not perform housework or chores on her own. Tr. 24-25; 668. The ALJ concluded that Plaintiff's mental impairments were non-severe pursuant to 20 CFR 404.1520a(d)(1) because these caused mild limitations in the four broad areas of mental functioning and on Plaintiff's ability to do basic work activities. Tr. 25.

Even though the ALJ found at step two that the mental impairments were not severe, the ALJ continued the analysis through the formulation of the RFC by incorporating by reference the mental impairments in her decision. Indeed, the ALJ explained that Plaintiff's RFC considered the mental limitations found at step two. Tr. 25. Incorporation by reference is sufficient to satisfy the requirement that the ALJ considered all the plaintiff's impairments in formulating the RFC. See

D.C. v. Commissioner, 2021 WL 1851830 at 5 (D.N.J.). This is especially true when, as in this case, the mental impairments found at step two were not severe but mild. See Id. (citing Holley v. Commissioner, 590 F. App'x 167, 169 (3d Cir. 2014) (when the ALJ found that claimant had minor mental impairments, the ALJ did not err when RFC included no mental limitations); Makowski v. Commissioner, 2017 WL 3151243 *7 (D.N.J.) (concluding "even if the ALJ did not discuss the impact of the admittedly mild limitations from Plaintiff's mental impairments at the RFC stage, despite having discussed them at length elsewhere in the opinion, this omission is not reversible error because the ALJ was entitled to not include 'minimal or negligible' deficiencies in the RFC."). See e.g., Green v. Saul, 2020 WL 3146619 *4 (S.D.Ga.); Younge v. Berryhill, 2017 WL 2978758 *12-13 (E.D. Pa.) (ALJ adequately discussed why plaintiff's mental impairment was not severe and was not required to discuss the mental impairment in the RFC evaluation). Upon consideration of the mild mental impairments found in the step two analysis, the ALJ concluded that these did not cause a functional limitation which would affect Plaintiff's RFC. As explained below, such a conclusion was based on substantial evidence in the record.

The ALJ gave weight to Dr. Emely Alcover's consultative examination. Dr. Alcover evaluated Plaintiff on April 24, 2018, and noted that Plaintiff's mental symptoms are associated with a mild recurrent depression; that the intensity of her symptoms is directly related to her physical impairments and that her emotional state improves when the physical pain improves. Tr. 152-155. Dr. Alcover noted that Plaintiff was inconsistent in her psychiatric treatment, took medications incorrectly and failed to attend therapies. Tr. 156. And that her mental conditions could improve if she regularly received psychological and psychiatric treatment. Id. Plaintiff takes issue with the fact that Dr. Alcover did not examine all of Plaintiff's medical records and based her evaluation on a single in-person evaluation. But Dr. Alcover's assessment of Plaintiff was consistent with the overall record and, as such, the ALJ correctly found her opinion to be persuasive. See 20 C.F.R. §404.1520c(c)(2) ("the more consistent a medical opinion [...] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion […] will be"); Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 144 (1st Cir.1987) (generally appropriate for an ALJ to rely on the reports of consultative and non-examining physicians in assessing RFC).

In July of 2018, Dr. Carmen Piñeiro, consultative examiner for the state agency, evaluated Plaintiff's medical records since June 2015 and concluded that Plaintiff suffered a mild

7

anxiety/depressive disorder due to her physical ailments. Tr. 645. Dr. Piñeiro noted that Plaintiff's mental state was grossly intact with an anxious or depressed mood; that Plaintiff was not in psychiatric treatment nor medicated; and that Plaintiff's function report emphasized physical limitations but did not support any significant emotional condition. Id. Dr. Piñeiro also found that Plaintiff had no limitations in understanding, remembering, or applying information; no limitations interacting with people; and only mild limitations concentrating, persisting, and maintaining pace, and adapting or managing herself. Tr. 645-646.

Dr. Luis Umpierre, a state agency consultative examiner, reviewed Dr. Piñeiro's assessment after Plaintiff's initial denial of benefits. Dr. Umpierre reviewed Plaintiff's medical records, updated to February 2018, considered Plaintiff's allegation of worsening of symptoms. Dr. Piñero concluded that, based on the totality of the evidence, Plaintiff's mental condition was non-severe and that she could perform her past relevant work. Tr. 666. Dr. Umpierre noted that the medical records revealed that Plaintiff had an adequate appearance, grooming, verbal expression, behavior, attention, impulse control, affect and thought process; that she was cooperative, logical, coherent, relevant, had no perceptual or thought disturbances, was well oriented, had intact immediate recent and remote memory, adequate concentration, judgment, and no evidence of psychiatric hospitalization. Tr. 667. The state agency assessments were not only based on the longitudinal record but on their examination of Plaintiff. Tr. 30. The ALJ gave weight to the expertise and specialized knowledge of state agency examiners. See Scott v. Saul, 2021 WL 735851 *10 (D.Mass.) (citing Moss v. Astrue, 2011 WL 1517988 *15–16 (D.N.H.)("state agency physicians and consultants are experts in social security disability programs, their opinions on the nature and severity of a claimant's impairments cannot be ignored by an ALJ"); SSR 96–6p, 2996 WL 374180 (S.S.A.); 20 C.F.R. §404.1527(f), §416.927(f)).

The assessments of Drs. Alcover, Piñeiro and Umpierre are also consistent with Plaintiff's medical records from American Psychiatric Systems (APS) and *Centro Interdisciplinario de Salud Mental* (CISME). The APS and CISME files establish that Plaintiff reported sadness, crying and anxiety due to her health problems. However, these files are consistent in that Plaintiff appeared well groomed, had appropriate clothing and hygiene, appropriate verbal expression, a calm attitude, normal control of impulses, logical thought process, no delusions or suicidal ideas, appeared oriented in time, place and person, had adequate interpersonal relations, intact memory, good judgment and adequate insight. Tr. 297-314; 625-634; 919-1088; 1254-1279. As such, the

8

ALJ's determination regarding Plaintiff's mental condition was not only based on the state agency examiner's opinions but on the balance of the record. And, as the Commissioner points out, the records reflect that (1) throughout the years of treatment Plaintiff's psychiatric treatment diminished from weekly to monthly sessions with prescribed medications, (2) she took medications in interval and only when she was feeling unwell, and (3) she had periods of improvement when her condition was in partial remission. Docket No. 17 at 11. See Joshua S. v. Kijakazi, 2021 WL 5036015 *3 (D.Me.)("[E]ven severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment.")

The ALJ also considered other important factors, including Plaintiff's symptoms, daily activities, medications and their side effects, and measures taken by Plaintiff to alleviate her symptoms, such as counseling and therapy for depression and anxiety. Tr. 29. See 20 C.F.R. §404.1529 (c)(3) (medications, treatments or other methods used to alleviate symptoms, and how the symptoms affect daily living, are important indicators of the intensity and persistence of symptoms). And any side effects that the medications had on her. See Tr. 1158, 1168, 1171, 1178; Dr. Jorge Miranda Alicea at Tr. 1143. The evidence in the record showed that the side effects of medication did not affect Plaintiff's functioning. Nonetheless, the ALJ accounted for potential drowsiness in Plaintiff's RFC, by limiting Plaintiff to work with no exposure to unprotected heights and with environmental limitations. Tr. 29. The ALJ also considered Plaintiff's ability to do chores, drive, bathe, and dress. Tr. 27, 29. The record supports a conclusion that Plaintiff can generally take care of herself even if she needs help with some chores due to her pain. Tr. 86-90. The ALJ also properly considered Plaintiff's activities of daily living in assessing her RFC.[4] See Coskery v. Berryhill, 892 F.3d 1, 7–8 (1st Cir. 2018) (Plaintiff's ability to carry out certain daily activities undermined the allegation of inability to work).

Plaintiff sustains that the ALJ should have determined that her mental conditions were severe (and, consequently, should have included mental limitations in the RFC) because Plaintiff received uninterrupted psychiatric treatment from June 2005 until 2019 and was diagnosed with major depression by Dr. Jorge L. Valentin Flores. But without more, a mental health diagnosis and evidence of treatment are insufficient to establish a severe impairment. Mateo Rivera, 2020 WL 7786920 *6 (citing Matar v. Comm'r of Soc. Sec., 2016 WL 1064627 *5 (S.D.Ohio) (diagnosis

---

[4] The ALJ noted inconsistencies between Plaintiff's reports on the activities she could perform and the objective medical evidence. Tr. 27.

and medication for depression does not necessarily mean that plaintiff's depression is a severe impairment that imposes work-related limitations); Dowell v. Colvin, 2014 WL 3784237 *3 (D.Me.) ("a diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity."). Plaintiff further argues that had the ALJ adequately assessed her mental condition, she would have likely been found unable to perform her past work. However, when substantial evidence supports the ALJ's determination at step two of the sequential process, Plaintiff "cannot rehash her step two argument at this final step." Mateo Rivera at *7 (citing Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010)).

The ALJ's conclusion that Plaintiff's mental limitations were mild, and did not warrant any limitations in the RFC, is amply supported by an extensive medical record. Plaintiff's mental conditions remained stable with routine treatment. Plaintiff maintained such stability even without taking proper medications or receiving routine counseling, and she was not impeded from completing an array of daily activities. In addition, the record contains the medical assessment of three physicians who agree that Plaintiff's mental impairments were mild. There is substantial evidence to sustain the ALJ's conclusion that Plaintiff's mental impairments were not severe and that mental limitations did not have to be included in the RFC.

### 2. Plaintiff's Obesity

Plaintiff further sustains that the record contains evidence of weight fluctuations and obesity that were not considered by the ALJ or any of the experts. Docket No. 12 at 23. This argument is wholly based on Plaintiff's opinion as to the purported importance of weight fluctuations. However, the record reflects that the ALJ considered Plaintiff's weight and her body mass index and concluded that Plaintiff's obesity had not caused more than minimal work-related difficulties. Tr. 24. There is no evidence in the record to conclude that Plaintiff's weight fluctuations caused significant limitations.

### 3. Plaintiff's Left Shoulder

Plaintiff alleges that the medical evidence and her testimony contradict the findings in the RFC that Plaintiff can "frequently overhead reach with left upper extremity". Docket No. 12. at 25. The ALJ considered Plaintiff's left shoulder pain, noting that Dr. Jorge Miranda Alicea determined that Plaintiff had adequate range of motion with no deformities or edema. Tr. 1153; 1157. Further, the ALJ considered Dr. Fausto Boria Carcano's evaluation and his conclusion that

Plaintiff's left shoulder flexion was 135 out of 150 degrees, but abduction was 150 out of 150 degrees. Tr. 1136. After ten sessions of physical therapy, Dr. Carlos Pérez López concluded that Plaintiff's left shoulder had healed. Tr. 1589-90. Furthermore, upon review of records, Dr. Vicente Sánchez noted that Plaintiff had the physical capacity to perform past work as a secretary. Tr. 674. See Tr. 651. This is consistent with the ALJ's conclusion that Plaintiff could perform her past work. See Ramos v. Kijakazi, 2022 WL 993754 *5 (D.Mass.) (ALJ does not have to perform the function-by-function analysis if her findings demonstrate by implication that she performed the assessment).

### 4. Plaintiff's Hearing Loss

Plaintiff alleges that the ALJ failed to evaluate her hearing loss. However, the ALJ did consider the evaluation done by audiologist Ingrid M. Cedo Cintrón on August 20, 2018. Dr. Cedo Cintrón concluded that Plaintiff had mild conductive hearing loss in the right ear and moderate conductive hearing loss in the left ear. Tr. 1755. But just a few months earlier, Dr. Alcover concluded that Plaintiff did not exhibit hearing problems during evaluation. Tr. 154. The ALJ determined that Plaintiff seemed to hear very well during the hearing on December 4, 2019. Tr. 27. See Ramos v. Kijakazi, 2022 WL 993754 *5 (D.Mass.) (ALJ can rely on personal observations of the claimant's demeanor during the hearing).

### 5. Sufficiency of the RFC

Plaintiff sustains that the RFC formulated by the ALJ is confusing because it considers a capacity to perform light work, and only sedentary work as of August 5, 2019. Plaintiff further argues that she is limited to sedentary work, and that any proposed work cannot contemplate any other than that which is sedentary. She also argues that the RFC is insufficient because it fails to include limitations on account of her left shoulder condition and hearing loss. Plaintiff's allegations with respect to her left shoulder and hearing loss were addressed above. The Court entertains her allegation that the RFC was inconsistent or ambiguous.

The RFC is defined as the most an individual can do despite his limitations. 20 C.F.R. §404.1545(a). The RFC determination is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment". See id. A claimant retains the capacity to perform her past relevant work when she can perform the functional demands and duties of the job as actually performed or as generally required by employers throughout the national economy. See SSR 82-

61, 1982 WL 31387 *2 (S.S.A.); Ramos-Rodríguez v. Comm'r of Soc. Sec., 2012 WL 2120027 *5 (D.P.R.). In making this determination, the ALJ must consider claimant's symptoms, laboratory findings, daily activities, medical sources statements, and the claimant's medical history. See 20 C.F.R. §404.1545(a)(1); SSR 96-8P, 1996 WL 374184 (S.S.A.). In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, including those that are not severe. See SSR 96-8P, 1996 WL 374184 (S.S.A.). However, the ALJ is only required to consider evidence that is credible. And if the ALJ "concludes that a claimant's deficiency is 'so minimal or negligible that … it would not limit her ability' to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error." D.C. v. Commissioner, 2021 WL 1851830 *5 (citations omitted).

Plaintiff's RFC is unambiguous, and the record does not support sedentary restrictions throughout the entire period of alleged disability. The ALJ was clear in the RFC that greater limitations reduced Plaintiff to a range of sedentary work only as of August 5, 2019. Tr. 26. The ALJ is allowed to consider greater restrictions during the period of evaluation. There is nothing wrong or confusing about concluding that Plaintiff was limited to light work initially but sedentary work after August 5, 2019. See García v. Colvin, 2019 WL 3322866, at *2 (D.Del.) (affirming the ALJ's bifurcated RFC which established that claimant could perform light work with limitations but was limited to sedentary work after claimant's condition worsened).

**6. Plaintiff could perform her past relevant work as a Secretary and Office Clerk.**

Plaintiff argues that both the RFC and the hypothetical presented to the ALJ were flawed because these did not account for limitations to sedentary work, and the ALJ erred in finding that she could work as a secretary or office clerk. Docket No. 12 at 30. The ALJ presented Plaintiff's RFC limitations to a vocational expert ("VE") and the VE determined that Plaintiff could work as a secretary or office clerk at the sedentary level. Tr. 65. The VE testified that a hypothetical individual with a similar RFC could perform past work as an office clerk or skilled secretary. Id. The VE testified that someone with Plaintiff's educational background and same experiences, limitations, and RFC could perform Plaintiff's past relevant work as a sedentary skilled secretary. The VE also stated that someone in Plaintiff's position could work as a semi-skilled office clerk, in the manner described by Plaintiff. Id.

A claimant is considered as having the ability to perform her past relevant work when she can perform the functional demands and duties of the job as it was actually performed by her. See

12

SSR 82-61, 1982 WL 31387 at *2 (S.S.A.); Ramos-Rodríguez v. Comm'r of Soc. Sec., 2012 WL 2120027 *5 (D.P.R.) (citing 20 C.F.R. §404.1560(b)(2))); Mateo Rivera v. Comm'r of Soc. Sec., 2020 WL 7786920 * 7. Plaintiff had the burden of proving that she could not return to her former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). The record is devoid of evidence that Plaintiff's impairments affected her ability to perform her past work in the manner she had performed it. The ALJ was allowed to rely on the VE's opinion to conclude that Plaintiff's RFC limitations did not preclude her from performing her past work as a secretary or office clerk. Tr. 30-31.

## IV.    Conclusion

The ALJ properly evaluated the record as a whole and her decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 28th day of February 2023.

s/Giselle López Soler
GISELLE LOPEZ SOLER
United States Magistrate Judge
